Filed 9/3/14  In re A. G. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A. G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B254311 (Super. Ct. No. 1379503) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GLORIA M., <br><br> Defendant and Appellant. | |

Mother appeals from the juvenile court orders terminating her parental rights to her minor daughter, A., and selecting a permanent plan of adoption.  (Welf. & Inst. Code, § 366.26.)[1]  Mother contends that the evidence is insufficient to support the finding that the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(B)(v)) did not apply.[2]  We affirm.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Alliana's father is not a party to this appeal.  He waived reunification services.

FACTUAL AND PROCEDURAL BACKGROUND

Upon her birth in July 2010, A. suffered from methamphetamine withdrawal. San Luis Obispo County Child Protective Services (CPS) took her into protective custody and placed her in foster care after her release from the hospital. CPS filed a petition alleging that mother and father failed to protect and care for A. (§ 300, subd. (b).) Mother had three other children, Anissa, Jacob, and Ruben, who were, respectively, fourteen, seven and three years old. They had lived with maternal grandmother since late 2009, in Santa Barbara County. Mother had a lengthy history with that county's Child Welfare Services agency (CWS). In July, the San Luis Obispo juvenile court approved A.'s detention and placement in foster care. It sustained the section 300 petition in August, and ordered that A. remain in foster care, with supportive services. It also ordered the transfer of her case to Santa Barbara County Juvenile Court, which accepted the transfer. CWS subsequently provided reunification services to mother.

In September 2010, mother and A. had weekly supervised visits. A. first visited with her siblings in January 2011 during her overnight visits with mother.

In May 2011, the juvenile court authorized CWS to place A. with mother, at a residential substance abuse treatment facility. Mother and A. moved into an apartment in September. Jacob and Ruben started residing there later that fall. Anissa continued residing with the maternal grandmother and visiting A. often.

In mid-February 2012, mother took A. to Mexico, leaving Jacob and Ruben with a babysitter. They were quickly placed back with the maternal grandmother. Sometime in the summer of 2012, mother returned to California with A.[3] She did not contact CWS or resume living with her other children.

CWS located mother in January 2013. She was living with A. in an apartment in Ventura. A. "appeared healthy and well groomed," but had "limited speech." CWS reported that A. had "bi-weekly contact with her siblings and maternal

_____

[3] The record fails to disclose the precise date of their return.

grandmother." On March 6, 2013, the court ordered that A. remain in the care and custody of CWS, and continue her placement with mother, with additional family maintenance services.

On June 4, 2013, CWS filed a subsequent, supplemental, amended petition alleging mother's failure to protect A. (§§ 342, 387, 300, subd. (b).) The petition further alleged that in May, mother gave birth to a son who tested positive for morphine and required intensive care. The Ventura County Child Welfare Services agency detained him. The petition also alleged that mother used heroin during her most recent pregnancy and her hands showed evidence of fresh needle tracks. The petition further alleged that A. was found unattended in a vehicle in 2013, and that in late May, when CWS took her into protective custody and placed her in foster care, A.'s teeth were visibly decayed. The juvenile court sustained the petition; bypassed reunification services; ordered that A. remain in foster care; and authorized visits with her family.

After A.'s 2013 detention, her sister Anissa and their cousin visited her once a month, beginning in July 2013. A. had difficulty interacting with them. Jacob and Ruben visited A. once, in November 2013.

A. formed a close and loving relationship with her foster parents and their seven-year-old daughter. She shared a room with her foster sister and they enjoyed playing together. After she joined her foster family, A.'s expressive language improved and she met or exceeded her developmental goals. A. loved attending preschool. Her foster parents were fully committed to adopting A.

On February 4, 2014, the juvenile court conducted a section 366.26 permanency planning hearing. CWS recommended the termination of parental rights and the selection of adoption as the permanent plan. (§ 366.26.) A.'s attorney and her Court Appointed Special Advocate (CASA) both supported the CWS recommendations. Her CASA advised the court that A. viewed her foster family as her family.

Mother's attorney argued that it would be detrimental to A. if the juvenile court terminated parental rights because it would interfere with her sibling relationships. Mother testified that A. had strong relationships with her siblings, who played with her

and helped care for her when she lived with mother. Her sister Anissa testified that when A. lived with mother, she visited A. frequently, cared for her on weekends, and took her on outings. After CWS detained A. in 2013, Anissa visited her once a month. Anissa also testified that A. seemed very happy with her foster family, and referred to her foster mother and sister as her "mom" and sister.

The juvenile court acknowledged that A. had a biological and emotional connection with her siblings. It also found "by clear and convincing evidence that adoption is the best plan for . . . A., . . . the best chance for her to succeed in every aspect of her life." The court terminated mother's parental rights, found that A. was adoptable and selected adoption as her permanent plan.

DISCUSSION

Mother contends the juvenile court erred in finding that the sibling relationship exception to adoption did not apply. We disagree.

Historically, reviewing courts have applied the substantial evidence standard of review to such determinations. (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575-576.) More recently, some courts have applied this standard to the juvenile court's determination whether a beneficial relationship exists, and the abuse of discretion standard to the determination whether the relationship is important enough to preclude adoption. (See *In re Bailey J*. (2010) 189 Cal.App.4th 1308, 1314-1315.) Under either standard, we can reverse only "'"if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." [Citations.]' [Citation.]" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.) We make no such finding here.

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted, unless "[t]he court finds a compelling reason for determining that termination would be detrimental to the child" due to an enumerated statutory exception. Section 366.26, subdivision (c)(1)(B)(v) provides an exception to the statutory preference for adoption where "the juvenile court determines that there is a 'compelling reason' for

4

concluding that the termination of parental rights would be 'detrimental' to the child due to 'substantial interference' with a sibling relationship." (*In re Daniel H*. (2002) 99 Cal.App.4th 804, 813.) "Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption.'" (*In re Celine R*. (2003) 31 Cal.4th 45, 61.)

In arguing that A. would suffer detriment if her relationship with her siblings ended, mother stresses the following comments which the juvenile court made during the permanency planning hearing: "I can accept . . . they're biologically bonded and . . . emotionally bonded." "[I]f there's some way to continue [the sibling relationship] and foster that connection, that would be a very good thing for A. She needs to have that connection." The existence of such a connection, however, does not preclude the termination of parental rights. "[E]ven if adoption would interfere with a strong sibling relationship, the court must nevertheless weigh the benefit to the child of continuing the sibling relationship against the benefit the child would receive by gaining a permanent home through adoption." (*In re Celine R., supra,* 31 Cal.4th at p. 61.) In doing so, the juvenile court is directed to consider "the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

Appellant relies in large part upon *In re Naomi P.* (2005) 132 Cal.App.4th 808, in asserting the sibling exception precluded the termination of parental rights although A. rarely lived with her siblings. *Naomi P*. is unavailing. It concerned an appeal challenging the sufficiency of the evidence to support the juvenile court's finding that the sibling relationship exception to adoption was applicable. The minor had never lived with her siblings but she had visited them consistently throughout her life. (*Id*. at pp. 811, 815-816.) The reviewing court affirmed the finding that the sibling exception

applied, and explained, "It is not our role to interfere with the trial court's assessment of the witnesses' demeanor and credibility." (*Id*. at 824.)

Here, the juvenile court properly considered the sibling relationship and found "that adoption is the best plan for . . . A., . . . the best chance for her to succeed in every aspect of her life." In making that finding, the court necessarily found that mother failed to meet her burden of proving that A.'s adoption was precluded under the sibling relationship exception. The evidence supports its findings. A. had a strong reciprocal bond with her foster family and she thrived in their care. The court reasonably concluded that A.'s needs for permanence and stability outweighed her need to maintain a relationship with her siblings.

## DISPOSITION

The judgment (order terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P.J.

YEGAN, J.

6

Denise De Bellefeuille, Judge

Superior Court County of Santa Barbara

_____

Suzanne Davidson, under Appointment by the Court of Appeal for Defendant and Appellant.

Michael C. Ghizzoni, County Counsel, Gustavo E. Lavayen, Deputy County Counsel for Plaintiff and Respondent.